Janice MYERS

v.

Patricia DIES and Port Authority of
Allegheny County, Appellants.

Commonwealth Court of Pennsylvania.

Argued May 4, 2004.
Decided June 8, 2004.
Reargument En Banc Denied
Aug. 2, 2004.

Gregory A. Evashavik, Pittsburgh, for appellants.

Robert E. Mielnicki, Pittsburgh, for appellee.

BEFORE: SMITH–RIBNER, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Patricia Dies and the Port Authority of Allegheny County (collectively, "Defendants") appeal from an order of the Court of Common Pleas of Allegheny County post-trial relief seeking to vacate an order of mistrial and to reinstate the jury verdict. We affirm for the reasons set forth below.

Janice Myers (Myers) initiated a civil suit claiming that Defendants negligently injured her. The case went to trial and after three days the jury indicated that they had reached a verdict. The Judge asked the jury: "[D]o you find that Patricia Dies and Port Authority of Allegheny County, collectively referred to as defendant, was negligent?" The jury foreperson answered "No," which was a purported verdict for Defendants. (N.T. 11/24/03, p. 8). The Judge then instructed the clerk to poll the jury. The record as

transcribed by the court stenographer indicates that the following occurred:

> *The Clerk:* Members of the jury, you heard the verdict as read. Juror No. 1, do you agree with the verdict?
>
> *Juror No. 1:* (Inaudible.) Yes.
>
> *Juror No. 2:* Yes.
>
> *The Court:* Wait a minute. What did juror No. 1 say?
>
> *Juror No. 1:* What was the question?
>
> *The Court:* Is this your verdict?
>
> *Juror No. 1:* You said this was—
>
> *The Court:* Do you agree with it?
>
> *Juror No. 1:* No.
>
> *The Clerk:* Juror No. 2, do you agree with the verdict?
>
> *Juror No. 2:* No.
>
> *The Clerk:* Juror No. 3, do you agree with the verdict?
>
> *Juror No. 3:* Yes.
>
> *The Clerk:* Juror No. 4, do you agree with the verdict?
>
> *Juror No. 4:* No.

(N.T. 11/24/03, pp. 8–9). Jurors Numbers 5 through 12 all responded Yes. Section 5105 of the Judicial Code, 42 Pa.C.S. § 5104, provides that: In any civil case a verdict rendered by at least five-sixths of the jury shall be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury. Thus, in order to be a valid verdict, 10 out of twelve jurors had to announce their agreement with the verdict. However, only 9 out of twelve jurors announced their agreement with the verdict. The record then reveals that the following occurred:

> *The Court:* Would you read those responses back, Ms. Reporter?
>
> (Record read.)
>
> *Juror No. 2:* Change mine to a yes, then.
>
> *The Court:* Take them back upstairs, Eddie.
>
> (Jury excused from courtroom).

(N.T. 11/24/03, p. 10). The judge then asked if counsel wanted to be heard. Myers' Attorney requested a mistrial on behalf of Myers. Defendants' attorney objected and requested that the jury be re-polled, sent back to continue deliberations or dismissed because the case was over inasmuch as a valid verdict had been reached as a result of Juror No. 2 changing his answer. The trial court declared a mistrial, excused the jury and ordered the parties to begin a retrial of the case.

The following day, all parties appeared before the trial court and Defendants' attorney presented a motion for post-trial relief to vacate the order of mistrial and to reinstate jury verdict. The trial court denied the motion. Defendants' appeal to this Court followed. Thereafter, pursuant to Pa. R.A.P.1925(a), the trial court issued an opinion in support of its decision. The trial court stated, in part, that:

> After I sent the jury out of the Courtroom and had the relevant portion of the transcript read back, Counsel for **MYERS** asserted that "... what Juror No. 1 said at first was not what she [the court reporter] typed. He uttered some words to form a sentence. I can't get an actual record on this issue." (N.T. p. 11). I agree. I stated on the record as follows: "[w]ell, you know, the purpose of polling is to ascertain that the jury understands, every member of the jury does indeed understand, and in open court indicates his approval of it. Now, there is no question that the first juror, I agree with you, Mr. Mielnicki, he said more than one word. He attempted to form some sort of sentence, and I didn't hear him, and that's why I broke in, because I couldn't hear him.. and there is no question he said no. The second guy definitely said no, and there is no question that juror No. 4 said no. Now, when No. 2—is that who blurted out I

want to change my vote to no? [1] He just wants to go home." (N.T. pp. 13–14).

. . .

The facts are as I have set out above and the declaration of a mistrial is within my discretion as the Trial Judge, and is warranted here. Under the circumstances, the effort of juror number 2 to change his vote after he realized what was going to happen is rejected by me, and a new trial is the appropriate remedy ... The purpose of polling a jury provides an opportunity for any of the jurors, who may have felt pressure to acquiesce in the verdict by the other jurors, to speak out as to the voluntariness of the verdict ... This matter is a graphic demonstration of why it is not appropriate to send the Jury back to deliberate after polling.

I clearly heard 3 "No" votes. The only recourse was to try the case again. That is what I ordered, and little more need be said.

(Trial Court's 1/22/2004 opinion, pp. 3–4).

On appeal, Defendants argue that the trial court abused its discretion by: 1) failing to recognize and accept that Juror Number 2 changed his vote from a "No" to a "Yes," thus giving Defendants 10 "Yes" votes and therefore a valid verdict in favor of Defendants and 2) curtailing the jury process and not allowing the jury to further deliberate or poll the jury anew when there is no evidence of substantial confusion or deadlock by the jury.

◼ "Our scope of review of an order granting a new trial is narrow. The grant of a new trial is with the sound discretion of the trial judge and an appellate court will reverse the decision of the court below only for capricious or palpable abuses of discretion." *Department of Transportation v. Nemiroff,* 42 Pa.Cmwlth. 478, 401 A.2d 10, 11–12 (1979).

◼ First, we address Defendants' argument that the trial court erred and abused its discretion in failing to recognize and accept that Juror Number 2 changed his vote from a "No" to a "Yes," thus giving Defendants 10 "Yes" votes and therefore a valid verdict in favor of Defendants. In support of their argument, Defendants cite *Barefoot v. Penn Central Transportation Co.,* 226 Pa.Super. 558, 323 A.2d 271, 272 (1974), which sets forth the proposition of Pennsylvania Law that "it is generally accepted that a juror, when polled in open court, has the right to dissent from a verdict to which he has agreed in the jury room." [2]

After the jury was polled, there were clearly 3 "No" votes. After the votes were read back, Juror No. 2, without any prompting by the trial court, stated "Change mine to a yes, then." However, at this time the polling of the jury was over and it is not clear what Juror No. 2 meant by this statement. In fact, in her brief, Myers states that she "knows, based on conversations with [Juror Number 2], meant that he wanted to vote "yes" as to the [Defendants'] negligence." If true, this would mean that Juror Number 2 did not change his original vote, since a "yes" vote on Defendants' negligence is that same as his original "No" vote that he disagreed with the jury's conclusion that

---

1. We note that Juror number 2 actually stated "Change mine to a yes, then." (N.T. 11/24/03, p. 10).

2. Defendants also cite several other Superior Court decisions in support of their arguments. However, all these cases are factually distinguishable from the situation in the case *sub judice* and, because they are from a Court of co-ordinate jurisdiction, are not controlling. There are no reported Commonwealth Court cases where a juror, after polling, purported to change his original vote. Thus, this is a case of first impression.

Defendants were not negligent. We recognize that Myers' statement in her brief is unverified and, because it is in her brief, is not part of the certified record in this case. However, even if we don't accept Myers' assertion regarding Juror Number 2's intentions as true, it is not clear from the record that Juror Number 2 actually did mean to change his original vote. Defendants cite *Barefoot* for the proposition that a juror should be allowed to change his vote at any time. However, Defendants' view that Juror Number 2 wanted to change his vote on whether or not Defendants were negligent when he stated "Change mine to a yes, then" is merely Defendants' interpretation of what Juror Number 2 meant. In this situation, it is up to the trial judge to make the determination as to what should occur, including whether or not a new trial should be ordered. As such, we reject Defendants' argument that the trial court improperly stopped Juror Number 2 from changing his vote.

■ Second, we address Defendants' argument that the trial court erred and abused its discretion in curtailing the jury process and not allowing the jury to further deliberate or poll the jury anew when there is no evidence of substantial confusion or deadlock by the jury.

In support of its decision, the trial court cites *Nemiroff*, which stands for the general proposition that, where the record discloses a substantial degree of uncertainty and confusion in the minds of the jurors, justice requires the granting of a new trial.

The trial court interpreted Juror Number 2's statement as an effort to change his vote merely because he wanted to go home. The trial court's interpretation of the juror's reasons for stating that he wanted to change his vote is reasonable, as are his explanations for his decision that he set forth in his Pa. R.A.P.1925 opinion. In addition, it is not clear that Juror No. 2 wished to agree with the verdict when he stated "Change mine to a yes, then." Juror Number 2's statement also shows that he might have been confused. Even if the trial judge had other options and could have done something else, such as order the jury to continue deliberations, the trial judge's failure to take such action is only reversible not for just an abuse of discretion, but for a *capricious* or *palpable* abuse of discretion. *Nemiroff.*[3] Our review of the record reveals possible confusion in the minds of the jurors and also reveals the possibility that Juror Number 2 only wanted to change his vote so he could go home. In this situation, we cannot say that the trial court capriciously or palpably abused its discretion when it ordered a new trial in this case. Given our limited scope of review, it is not the role of this Court to decide whether we would have made the same decision as the trial judge. Rather, we must determine whether the decision that the trial judge did make was a capricious or palpable abuse of discretion. Having determined that there was no abuse of discretion, the decision of the trial court is affirmed.

Accordingly, the order of the trial court is affirmed.

---

**3.** Defendants cite *Nemiroff* in support of their arguments and, in her brief, Myers argues that *Nemiroff* is not applicable because it had nothing to do with granting a mistrial. Although we reject Defendants' arguments, we agree with the statement in Defendants' brief that our standard of review is whether the trial judge committed an abuse of discretion. Additionally, we believe that *Nemiroff* sets forth the correct standard of review because *Nemiroff* involved the granting of a new trial, which is the same issue in the case *sub judice*.

## ORDER

AND NOW, June 8, 2004, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.